UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRIN TYLER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. CV 08-4409 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On July 9, 2008, plaintiff Darrin Tyler ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 14, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 28, 2005, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 13). Plaintiff asserted that he became disabled on June 28, 2005, due to paranoia and possible drug and alcohol addiction. (AR 111-12). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on September 6, 2007. (AR 29-46).

On January 10, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: depression and schizophrenia (AR 15); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 15); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: (i) a poor ability to understand, remember, and carry out complex or detailed instructions; (ii) a poor ability to deal with the public; and (iii) a fair ability to maintain attention and concentration (AR 16); (4) plaintiff had no past relevant work (AR 18); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 19); and (6) plaintiff's allegations regarding his symptoms were not entirely credible (AR 17).

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

On May 20, 2008, the Appeals Council denied plaintiff's application for review.  (AR 5-7).

### III.     APPLICABLE LEGAL STANDARDS

#### A.     Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

///

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.** **Standard of Review**

  Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and

1  the claimant's conduct (*e.g.*, daily activities, work record, unexplained or
2  inadequately explained failure to seek treatment or to follow prescribed course of
3  treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at
4  680-81; Social Security Ruling ("SSR") 96-7p.[2]  Although an ALJ may not
5  disregard such claimant's testimony solely because it is not substantiated
6  affirmatively by objective medical evidence, the lack of medical evidence is a
7  factor that the ALJ can consider in his credibility assessment.  Burch, 400 F.3d at
8  681.

### 2. Analysis

10  Plaintiff contends that the ALJ inadequately evaluated the credibility of
11  plaintiff's subjective complaints.  (Plaintiff's Motion at 2-4).  Specifically,
12  plaintiff argues that the ALJ inadequately addressed or ignored plaintiff's
13  testimony that he (i) has difficulty concentrating, in part due to plaintiff's paranoia
14  and auditory hallucinations; (ii) has difficulty understanding information taught in
15  his GED study program and remembering information he reads; and (iii) feels that
16  people are out to get him, and that they are watching and/or harassing him.
17  (Plaintiff's Motion at 2-3) (citing AR 39-41).  The Court disagrees.  The ALJ
18  presented clear and convincing reasons for discounting plaintiff's statements and
19  testimony, and thus did not err in his assessment of plaintiff's credibility.
20  First, to the extent plaintiff suggests that the ALJ failed completely to
21  consider plaintiff's subjective complaints, that assertion is belied by the record.
22  The ALJ expressly noted that plaintiff's subjective symptoms included paranoia,
23  auditory hallucinations, difficulty sleeping, inability to be in crowds of people,
24  ///

---

[2]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007) (citing SSR 00-4p).

nightmares, short attention span, and lack of concentration.  (AR 17) (citing Exhibits 2E [AR 72-79], 7E [AR 111-17]).

Second, the ALJ properly discounted plaintiff's allegations of mental limitations as inconsistent with plaintiff's daily activities.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  As the ALJ noted, plaintiff's brother stated that plaintiff could prepare meals, perform household chores, use public transportation, watch television, play basketball, lift weights, socialize with relatives, and care for his own personal hygiene.  (AR 17) (citing Exhibit 4E [AR 88-95]).  The ALJ reasonably concluded that such daily activities suggest that plaintiff is not as limited as he claims, and at a minimum that plaintiff is able to perform simple tasks.  (AR 17).

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence.  Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  Here, the ALJ concluded that while record evidence demonstrates that plaintiff's mental impairments are severe, they were not completely disabling.  The ALJ noted that Dr. Henry Khin, plaintiff's treating physician, assigned plaintiff a global assessment functioning ("GAF") score of 60 in 2006, and 55 in 2007.[3]  (AR 17)

---

[3] A GAF score is a clinician's judgment of an individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American

(continued...)

(citing Exhibits 10F at 2 [AR 302], 13F at 12 [AR 373]).  The ALJ found these GAF scores consistent with the findings of a state-agency reviewing physician "who found that [plaintiff] maintained the ability to perform simple, repetitive tasks[,] with moderate difficulties in understanding, remembering, and carrying out detailed instructions, [and] moderate difficulties in interacting with the general public, maintaining attention and concentration, respond[ing] appropriately to changes [in the work setting], and setting realistic goals."  (AR 18) (citing Exhibit 5F [AR 212-13]).  The ALJ also found such scores consistent with lay statements "that [plaintiff] was usually capable of following instructions if they were not too complicated."[4]  (AR 18) (citing Exhibit 2E at 6 [AR 77]).

Moreover, the ALJ noted an inconsistency between plaintiff's claim that he had stopped using drugs in March 2006 and the medical records which reflect that plaintiff was diagnosed with substance dependence "on several occasions after March 2006."  (AR 17).

This Court cannot second guess the ALJ's reasonable credibility determination in light of the record medical evidence.  See Rollins, 261 F.3d at 857; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 750).  Accordingly, a reversal or remand on this basis is not warranted.

---

(...continued)
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000).  A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id. at 34 (emphasis in original).

[4]The ALJ rejected a lower GAF score of 35 assigned on November 12, 2007 by a consultative examiner.  (AR 18).  The ALJ stated that such a GAF score was inconsistent with plaintiff's treating physician's higher GAF assessments and the functional assessment of the state agency reviewing physician.  The ALJ also found the lower score inconsistent with the consultative examiner's own examination notes, which reflected that plaintiff "was able to do most task[s] on the mental status exam and that [plaintiff] was able to make simple, occupational, and personal adjustments."  (AR 18) (citing Exhibit 16 F at 5 [AR 446]).

**B.    Treating Physician**

      **1.    Applicable Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[5] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

    The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn, 495 F.3d at 632 (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of

---

[5] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

When they are properly supported, the opinions of physicians other than treating physicians, such as examining physicians and non-examining medical experts, may constitute substantial evidence upon which an ALJ may rely.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

### 2. Analysis

Plaintiff contends that the ALJ failed adequately to evaluate the medical opinion evidence.  (Plaintiff's Motion at 4-6).  Specifically, plaintiff alleges that the ALJ erroneously ignored findings in treatment notes from Dr. Khin, plaintiff's treating physician, that plaintiff had a GAF score of 40 on May 19, 2005, and GAF scores of 45 on June 2 and August 11, 2005.[6]  (Plaintiff's Motion at 2-3).  The

---

[6]A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social,

(continued...)

Court concludes that the ALJ did not materially err in evaluating the record medical evidence.

First, the ALJ was not required to discuss every piece of evidence in the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). An ALJ must provide an explanation only when he rejects "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Here, the ALJ reasonably omitted Dr. Khin's 2005 GAF scores – two of which were dated before plaintiff's alleged onset date – in favor of the treating physician's most recent GAF scores. As discussed above, the ALJ reasonably found Dr. Khin's 2006 and 2007 GAF assessments supported by substantial evidence. (AR 18) (citing Exhibits 2E at 6 [AR 77], 5F [AR 212-13]). In fact, the ALJ rejected an even lower GAF score as inconsistent with the medical evidence. See supra note 4. Simply because the ALJ did not expressly reference a similarly low GAF score from plaintiff's treating physician does not mean she failed to consider such evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Second, any failure to address the GAF scores assigned in Dr. Khin's 2005 treatment records does not constitute legal error. GAF scores, standing alone, are not determinative of mental disability for purposes of social security claims. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings.");

---

(...continued)
occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34 (emphasis in original). A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Id.

McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error);[7] see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

Finally, even assuming the ALJ erred in not expressly discussing Dr. Khin's 2005 GAF assessments, such error was harmless. Plaintiff does not point to, and the Court does not find, a medical opinion that suggests plaintiff's mental impairments precluded him from working for any twelve-month period. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled).

Accordingly, a remand or reversal on this basis is not warranted.

**C.     The ALJ Properly Considered Lay Witness Evidence**

Plaintiff contends that the ALJ failed properly to consider statements provided by plaintiff's mother or sister,[8] Jeannine L. Tyler, and plaintiff's brother,

///

---

[7]The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).

[8]Although the ALJ and the parties refer to Jeannine L. Tyler as plaintiff's sister (AR 18; Plaintiff's Motion at 6, Defendant's Motion at 7), the record suggests that Ms. Tyler is plaintiff's mother. (AR 79, 96, 103, 111, 130, 138).

Doug Tyler, and failed to provide sufficient reasons for disregarding such statements. (Plaintiff's Motion at 6-8). The Court disagrees.

### 1.     Pertinent Facts

In a function report dated August 3, 2005, plaintiff's mother/sister provided information about plaintiff's daily activities, personal care, meals, house and yard work, getting around, shopping, money handling, hobbies and interests, social activities, and information about his abilities. (AR 72-79). Plaintiff's mother/sister stated, in pertinent part, that plaintiff: (i) "cannot function without medication" and has difficulty functioning "even with medication"; (ii) needs reminders to do household chores; (iii) is easily distracted; (iv) has difficulty with memory, completing tasks, concentration, understanding, following directions and getting along with others; (v) experiences auditory hallucinations; (vi) has a short attention span; (vii) can usually follow simple instructions; and (viii) does not handle stress or changes in routine well. (AR 73-78).

In a function report dated August 3, 2005, plaintiff's brother stated, in pertinent part, that plaintiff: (i) has difficulty sleeping even with medication, suffers from nightmares, and fears danger to his family; (ii) needs reminders to take medication and to do household chores; (iii) is easily distracted; (iv) cannot be trusted with large sums of money (v) is unable to remain seated for long periods of time; (vi) is distracted by hearing voices; (vii) is troubled by crowds, "unsettling environments," and family arguments; (viii) has difficulty with memory, completing tasks, concentration, understanding, following directions and getting along with others; (ix) has a short attention span; (x) can usually follow simple instructions; and (xi) does not handle stress or changes in routine well. (AR 89-94).

In her decision, the ALJ noted that plaintiff's mother stated that "[plaintiff] experienced auditory hallucinations, had difficulty sleeping, could not be in crowds of people, had nightmares, had a short attention span, and was unable to

concentrate . . . [and] that [plaintiff] was usually capable of following instructions if they were not too complicated."  (AR 17, 18) (citing Exhibit 2E [AR 72-79]).  The ALJ also noted plaintiff's brother's statements "that [plaintiff] prepared meals, performed household chores, used public transportation, watched television, played basketball, weight lifted, socialized with relatives, and cared for his own personal hygiene needs."  (AR 17) (citing Exhibit 4E [AR 88-95]).

### 2. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague, 812 F.2d at 1232 (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work).  The standards discussed in these authorities appear equally applicable to written statements.  Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable

ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 3. Analysis

To the extent the ALJ erroneously failed to discuss particular statements made by plaintiff's mother/sister and brother, any error was harmless.

First, the ALJ expressly considered most of the statements provided by plaintiff's relatives. (AR 17, 18) (citing Exhibits 4E [AR 88-95], 2E at 6 [AR 77]). The ALJ was not required to discuss every detail of the lay statements. See Black, 143 F.3d at 386.

Second, to the extent the ALJ failed expressly to address statements from plaintiff's relatives that simply corroborated limitations the ALJ already accounted for in her decision, any error was harmless. See Zerba v. Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony harmless error); Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's contention that ALJ improperly rejected lay witness statement of claimant's girlfriend where such statement was cumulative of statements by claimant which ALJ accepted).[9] Here, the primary points made in the two lay statements are that plaintiff has difficulty with memory, attention, concentration, completing tasks, understanding and following directions, and getting along with others, and that plaintiff does not handle stress or changes in work routine well. (AR 73-78, 89-94). The ALJ accounted for such limitations in plaintiff's residual functional capacity assessment, which included nonexertional limitations of "poor ability to understand, remember, and carry out complex or detailed instructions; poor ability to deal with the public; and fair ability to maintain attention and concentration." (AR 16).

---

[9]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

To the extent the ALJ failed to consider the statement of plaintiff's mother/sister that plaintiff "cannot function without medication," any error was harmless. When placed in context, such statement is not probative of a limitation on plaintiff's ability to work. In her function report, plaintiff's mother/sister also stated that, although difficult, plaintiff <u>was</u> able to function while taking medication. (AR 73). Plaintiff's testimony before the ALJ suggests both that (a) like his mother/sister stated, he was able to function when he was taking his prescribed medication, and (b) he was compliant with his medication regimen.[10] (AR 38). Plaintiff fails to demonstrate how any difficulty he had functioning while taking his prescribed medication impaired his ability to work beyond what was already accounted for in the ALJ's residual functional capacity assessment. In light of the substance of the statements of plaintiff's mother/sister, plaintiff's own statements, and the medical evidence in the record, this Court can confidently conclude that no reasonable ALJ, even fully crediting the statement foregoing statement which was not expressly addressed by the ALJ, could have reached a different disability determination. For similar reasons, any error in failing to mention plaintiff's brother's statement that plaintiff could not be trusted with large sums of money is harmless.

Accordingly, a remand or reversal on this basis is not warranted.

## V.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 21, 2010

/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiff testified that he had no problems eating or sleeping while taking his medication. (AR 38).

16